## The Union Bank vs. Barker and others.

It is well settled, independent of any statutory provision on the subject, that a de‑fendant, in a bill in chancery, is not bound to make a discovery as to any charge of felony against him, or as to any criminal offence involving moral turpitude.

The language of the act of January 30, 1833, providing that a defendant shall be compelled to answer any bill in chancery charging him with being a party to any conveyance, or assignment, made or created with intent to defraud prior or subsequent purchasers, or to hinder or defraud creditors or other persons, or where the defendant shall be charged with any fraud whatever, affecting the rights or property of others, but that no such answer shall be received as evidence against any party thereto, on any complaint, or on the trial of any indictment for the fraud charged in the bill, is broad enough to embrace a fraud committed by the defendant by means of his own forgery. But it was not the intention of the legislature, by that act, to compel a defendant, in a bill in chancery, to answer such a charge upon his oath.

The act of 1833 was intended to embrace a class of frauds, affecting the rights of property, which were not punishable by the common law, but which, by the stat‑utes of this state, are now made criminal; so that the effect of the several statutory provisions, subjecting persons guilty of such frauds to criminal prosecutions there‑for, should not deprive the parties injured, of the discovery and relief to which they were formerly entitled in the court of chancery.

Held, accordingly, that defendants were not bound to answer a charge of having entered into a conspiracy to defraud the complainants and others by means of forgeries; and of having actually obtained several sums of money by means of forged drafts and checks.

This was an appeal by the complainants from an order of the vice chancellor of the first circuit. The bill in this case charged, in substance, that the defendants, J. Barker and T. Canouse, entered into a conspiracy to defraud the complain‑ants and others by means of forgeries; that they obtained from the complainants several sums of money by means of forged drafts and checks, which were particularly specified in the bill; and that some of the proceeds of such forged drafts and checks, or of the moneys obtained thereon, were in the possession of the respondents, and some in the hands of the police, &c. The complainants therefore prayed for an injunction, to restrain the respondents from parting with the proceeds of the forged drafts and checks, &c. and for general relief. Barker and Canouse demurred to so much of the discovery sought by the

bill as required them to answer as to the alleged conspiracy, and the obtaining of the funds of the complainants by means of the forgeries mentioned in the bill.

· *S. A. Foote*, for the appellants.

*J. M. Smith*, for the respondents.

THE CHANCELLOR.   It is perfectly well settled, independent of any statutory provision on the subject, that a defendant in a bill in chancery is not bound to make a discovery as to any charge of felony against him, or as to any criminal offence involving moral turpitude.   The only question for consideration in this case, therefore, is whether the act of the 30th of January, 1833, (2 *R. S.* 103, § 46 *of 2d ed.*) extends to this case.   The first section of that act provides that a defendant shall be compelled to answer any bill in chancery, where by law a bill may now be filed, charging the defendant with being a party to any conveyance or assignment of *any estate or interest in lands, goods, or things in action, or of any rents or profits arising therefrom, or to any charge on any such estate, interest, rents, or profits, made or created with intent to defraud prior or subsequent purchasers, or to hinder or defraud creditors, or other persons, or where the defendant shall be charged with any fraud whatever, affecting the right or property of others.*   And the second section declares that no such answer shall be received as evidence against any party thereto, on any complaint, or on the trial of any indictment, for the fraud charged in the bill.

The language of this statute is probably broad enough to embrace a fraud committed by the defendant by means of his own forgery ; an offence involving the highest degree of moral turpitude, which, by the common law, subjected the offender to the disgraceful punishment of the pillory, and which has long since been made a felony by our statutes.   But it certainly could not have been the intention of the legislature, by the act of January, 1833, to compel a defendant in a bill in chancery to answer such a charge upon his oath.   There is another class

of frauds, however, affecting the rights of property, which were not punishable at all by the common law, but which by the statutes of this state are now made criminal. And it was this class of frauds which the act referred to was intended to embrace; so that the effect of the several statutory provisions, subjecting persons guilty of such frauds to criminal prosecutions therefor, should not deprive the parties injured of the discovery and relief to which they were formerly entitled in this court.

The vice chancellor was right in supposing that the respondents were not bound to answer upon oath as to the charges of felonious forgery, covered by the demurrer to the discovery sought in this case. The order appealed from must therefore be affirmed with costs.